[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint dated March 28, 2002 and returnable April 23, 2002 in which complaint the plaintiff wife sought a dissolution of the marital union, custody of the minor children, alimony, child support, exclusive use and possession of the family residence located at 20 Beechwood Terrace, Griswold, an assignment of the defendant's interest in certain real estate located at 20 Beechwood Terrace, Griswold pursuant to the provisions of § 46b-81
of the Connecticut General Statutes, an allowance to prosecute and such other relief as the court deems fair and equitable.
The complaint was filed on April 9, 2002 and accompanying the complaint was a motion for custody, alimony, child support, exclusive use and possession, allocation of debts, etc.
On June 17, 2002 the court, Devine, J., accepted a certain agreement of the parties dated June 17, 2002 and directed that its terms and conditions should be orders of the court. In addition, the court on that date entered certain orders as concerns medical and dental insurance for the minor children and allied issues including the apportionment for unreimbursed medical expenses.
The usual automatic orders accompanied the complaint as well as the verification of service on the defendant by the state marshal.
The defendant appeared by counsel on April 16, 2002 and on April 24, 2002 the defendant executed an answer and a cross complaint in which cross complaint the defendant claimed a dissolution of the marriage, orders concerning custody and/or access to the minor children, an equitable division of all real and personal property and such other remedy which at law or equity may appertain. CT Page 857
On April 30, 2002 the defendant filed a certain motion as concerns custody and access to the minor children, and pursuant to an agreement between the parties, was accepted by the court, Devine, J.
The file reflects the parenting education form indicating completion of that program by the parties.
Financial affidavits were filed by the parties on June 17, 2002. The June 17, 2002 stipulation concerned itself with the defendant vacating the marital home, the payment of child support, expenses and matters of like nature.
On October 23, 2002 the plaintiff filed a motion for alimony pendente lite, an examination of the file seems to indicate that the motion was not acted upon.
A further agreement of the parties was reached as concerns a gift to each of the minor children from the defendant and an agreement as to access as to the marital home for the purposes of conducting an appraisal thereof.
On December 17, 2002 and on December 19, 2002 the plaintiff and the defendant with their respective attorneys and witnesses appeared before the court and the matter was heard to a conclusion.
The court makes the following findings of fact.
The plaintiff Deborah A. Buttacavoli, whose maiden name was Marshall, married the defendant in Mystic on December 29, 1987 at the home of her parents. Both parties have a residence in the state of Connecticut for more than one year. There are two children of this marriage; to wit, Joseph A. Buttacavoli, born August 23, 1986, and Kristen A. Buttacavoli, born June 21, 1988. No other minor children have been born to the plaintiff wife from the date of the marriage to the present time. Neither party has been a recipient of welfare from the state of Connecticut or any town, city or municipality or subdivision thereof.
Initially at the time of the marriage, the plaintiff was employed at Electric Boat, Division of General Dynamics, as a clerk. After the daughter Kristen was born, the plaintiff stopped work at Electric Boat and the parties agreed that the plaintiff should remain at home and care for the children. When the daughter Kristen attained age 6, the plaintiff returned to the work place.
At one point in time, the plaintiff did volunteer work at the CT Page 858 children's school and was involved in special education work. The plaintiff is age 46. She is a high school graduate. She has some experience in matters of special education.
The plaintiff presently works as an instructional assistant in special education for the Griswold Board of Education. The plaintiff works 30 hours a week under a contract and her hourly rate is $13.71. The plaintiff is compensated bi-monthly.
Problems in the marriage developed several years ago; the plaintiff claiming that she was the subject of verbal and mental abuse.
The children referred to are respectively in the 11th grade and 9th grade. It was the plaintiffs lament that the defendant only rarely engaged in activities with the children and that the defendant was involved in certain athletic workouts four nights a week and that the defendant spent little time with the plaintiff. Apparently there were verbal arguments between the parties. The plaintiff became involved in school conferences and matters of like nature, feeling that the same was in the best interest of the children. The defendant did not participate.
The minor child Joseph has apparently been involved in some problems of late. He has been suspended from riding on the school bus. The young man is receiving counseling.
The plaintiffs activities included her taking care of the home and the children. In March of 2002 the plaintiff and the defendant were involved in an argument where the defendant struck the plaintiff with a broom. The authorities were called and the authorities indicated that the defendant should leave the premises.
It was also the plaintiffs lament that the defendant has always, in her words, put her down; that she could not have friends.
The plaintiff expressed herself with regard to there being no problem as to the custody of the minor children being joint, indicated at the time of trial that the defendant had not seen the children for a period in excess of two months. The plaintiff feels that the defendant is entitled to reasonable rights of visitation. The plaintiffs request was for $182.00 a week in support.
She is desirous of having health insurance for the benefit of the children and the allocation of percentages as concerns uncovered medical expenses. The plaintiff is presently covered under the defendant's medical coverage. The plaintiff indicated that it was possible for her to CT Page 859 get medical insurance coverage incident to her position and that the same would cost her $16.00 every two weeks.
The plaintiff indicated that her request as concerns alimony was to the amount of $150.00 a week for a period often years.
The plaintiff noted that except for the arrival of the minor child Kristen that she has worked throughout the marriage.
The plaintiff requested that she be the beneficiary of any outstanding present life insurance which is in force or in place as concerns the defendant.
The plaintiff testified that the debts shown on her financial affidavit are debts that she incurred or incurred for herself and the children. The plaintiff is desirous of having the court direct the defendant to help her as concerns a certain debt to Sears.
The plaintiff had no objection to an apportionment of tax exemptions and indicated that they might be shared between the parties.
The plaintiff indicated that the defendant has been employed at Electric Boat for over 20 years and she is desirous of having one half of the defendant's SSTP and one half of the defendant's pension as of the date of the dissolution.
The plaintiffs request as to the real estate was that she should receive the same and that she would assume and be responsible for any outstanding mortgages, liens or claims.
The plaintiff expressed a wish to have the court consider prospectively matters as concerns higher education costs for the children pursuant to Public Act 02-128.
The plaintiff also made a request as concerns counsel fees from the defendant.
The plaintiff could not recall the reason for the argument between the parties which resulted in her being struck with the broom handle. The plaintiff acknowledged that she had thrown a glass of water at the defendant. The plaintiff also indicated that there were occasions during the union when the defendant would throw items in the home, including the television.
The plaintiffs date of birth is February 29, 1956. She characterized CT Page 860 her health as fine. The plaintiff takes Detrol for an overactive bladder. The plaintiff is not presently under the care of any medical practitioner or psychiatrist.
The plaintiff acknowledged that the child Joseph A. Buttacavoli was adopted by the defendant when the child was 9 months old.
The plaintiff, prior to the present union, had been married; that occurring in 1979; that marital union ended in 1982.
According to the plaintiff, the hours that the defendant often worked were 12-hour days, 7:00 a.m. to 7:00 p. m. and that the defendant on occasion was the sole support of the family. The plaintiff acknowledged that because of the long hours put in by the defendant that he would on occasion fall asleep on returning home due to the long hours.
During the defendant's employment at Electric Boat, a point came when he became a draftsman at Electric Boat and apparently continues in that work to the present time.
The child Kristen is now age 14. The child Joseph is now age 16.
The plaintiff indicated that, in her words, nothing remained in the marriage and that the parties were engaged in arguments all the time.
The plaintiff acknowledged some writings or communications between a friend of hers by the name of Antony in 1998. The friend was a teacher in New Hampshire and that no inappropriate conduct occurred according to the plaintiff.
There was an event in July of 2000 concerning a certain pool party at the home of the plaintiff and the defendant where the defendant accused the plaintiff of drinking to excess. In addition, there were claims with regard to the attire of the plaintiff and/or others at the party at the time of their being in the pool.
There have been difficulties in the marriage involving the son Joseph and on one occasion the defendant had to separate the plaintiff and the oldest child, one from the other.
As indicated, the son Joseph is now involved in counseling.
It was claimed that the plaintiff has a phone block on her phone as concerns the means of access by the defendant of contacting the children. The plaintiff denied any claim of smoking any illicit item. CT Page 861
The defendant apparently suggested counseling to the plaintiff and complained about the plaintiffs mood swings after a certain medical procedure that she had gone through.
The plaintiff, incident to her testimony, indicated that she was desirous of having the court consider awarding to her one half of anything that the defendant receives as concerns a pending worker's compensation claim. The defendant's compensation claim apparently involves matters of carpal tunnel syndrome, numb and throbbing hands.
The defendant, incident to some of his works, works on a computer.
When the defendant removed himself from the marital home, he first lived with his mother. The defendant now has his own apartment. The defendant took with him, when he vacated, his personal effects, clothing and matters of like nature.
At the time of the initiation of the petition for dissolution, the plaintiff acknowledged taking $1,600.00 from a joint bank account.
The plaintiff indicated that the defendant was a hard worker; that he did not drink nor did he appear to be in the company of other women and acknowledged that the defendant complied with the agreement submitted to the court with regard to the gift to each child for Christmas.
Incident to her present position, the plaintiff is not employed during the summer.
At the time that the plaintiff left Electric Boat, she had been there for 12 years.
The plaintiff acknowledged that the defendant has been regularly paying the $178.00 weekly for the support of the minor children.
As concerns issues of education, the plaintiff indicated that both herself and the defendant were high school graduates; that the defendant had done some college work in drafting after high school.
The pool party referred to earlier in the memorandum occurred on July 4th", approximately 10 to 12 people were in attendance. It was represented that both the plaintiff and the defendant had been consuming alcoholic beverages in contrast to an earlier representation. It was represented that the defendant locked the plaintiff out of the house due to the nature of the attire or lack thereof in the swimming pool and that CT Page 862 caused further problems.
The plaintiffs testimony was to the effect that the defendant had threatened to petition for a dissolution of the marital union many times during the union.
The plaintiff has a neighbor friend whose name is Michelle; notwithstanding her testimony that the defendant was desirous of her having no friends.
It was the plaintiffs feeling that the defendant's attitude was that his work and job was more important than the marriage.
The plaintiff presently has been in the Griswold school system for seven years and wishes to stay in that position.
During the life of the marriage, on occasion, the plaintiff has received gifts from her parents to help out during times of marital problems.
The plaintiff clarified certain issues as to any errors in earlier filed financial affidavits.
She testified further with regard to emotional problems of the son Joseph; indicated, however, that the boy is an honor roll student at Griswold High School as a junior and that physically the son Joseph is, in her words, all right. The daughter Kristen, age 14, is a freshman at Griswold High School; physically and emotionally she appears to be stable.
There has been apparently only one instance of overt physical violence. There have been no problems, according to the plaintiff, as concerns her conduct with drugs and no problems insofar as alcohol as to the defendant; notwithstanding some of the representations made as to the conduct of the parties at the pool party.
The plaintiff characterized the reason for the irretrievable breakdown of the parties as "the parties can't get along any more."
The plaintiff affirmed that she has not engaged in any inappropriate relationships outside the marriage.
From the testimony of William D. Henry, the court finds that Mr. Henry is a selfemployed appraiser in real estate. He conducts a business known as Associated Appraisal Service. He has been licensed since 1973 and Mr. CT Page 863 Henry appraised the premises owned by the parties at 20 Beechwood Terrace. He described it as being a raised ranch situated on 1.4 acres at below road grade; that the property had been built in 1989; contained 1,080 square feet, has a two-car detached garage and he valued the same at $135,000.00. Mr. Henry's appraisal included checking the land records and researching comparables. Mr. Henry's statement for services was $375.00.
From the testimony of John A. Marcure, Mr. Marcure is a certified public accountant with the F. Robert LaSaracina Company. He has been a CPA since 1967. Mr. Marcure testified as to the value of the defendant's pension benefits. He described the manner in which he arrived at the valuation. Mr. Marcure on the basis of his computation as to what was called the Tech Plan Value Benefits of the defendant at time of eligibility was in the amount of $301.00 a month and represented that the present value of the plan was $9,942.00.
In addition, Mr. Marcure verified the pension plan valuing the same at $18,067.00 for a monthly benefit at age 65 of $547.00. According to the witness Marcure, the defendant has to wait until attaining age 65 in order to receive the benefits adverted to or to enable the defendant to withdraw monies therefrom. According to the witness Marcure, the defendant is not presently in a position where he can secure either the $9,942.00 or the $18,067.00. The witness Marcure indicated the fee being charged for his services.
From the testimony of Robin Faulise, the court finds that she has known both the plaintiff and the defendant for quite some time. The witness' age is 44; she was first acquainted with the plaintiff incident to the plaintiffs employment about seven years ago. The parties became acquainted and became friends; that is, the witness and the plaintiff. The witness Faulise has visited the home and indicated that she had never seen the defendant on any of those occasions intoxicated or using illicit substances. The witness Faulise described the plaintiff as a good mother; never involved in substance abuse of any sort; that the nature of her contacts with the plaintiff were three or four times a week; never observed the plaintiff to have consumed any immoderate amount of alcohol, social drinking only.
From the testimony of the witness Laurie Dziedzic, this witness is acquainted with the plaintiff and the defendant; has known the plaintiff for five years and the defendant for two years. This witness has two children that are the same ages as the Buttacavoli children and the children are in the same grades at school. This witness is a single parent; a widow. The witness was aware of the July 4th pool party and CT Page 864 problems attendant thereto; verified that the defendant had locked the doors, etc., so that those who were involved in the pool activities could not re-enter the premises to secure their clothes. This witness indicated that there were children at the pool party and that there was no improper or disorderly conduct. This witness described the defendant as a man of few words and not being particularly sociable.
From the testimony of James B. Blair, the court finds that he is a real estate appraiser and has been such for over 30 years. He has been a certified appraiser for over 10 years. The parties stipulated as to this witness' qualifications. He is employed by the Riess Appraisal Agency and appraised the subject premises at Beechwood Terrace. This witness supervised Jacqueline Maneri who did the actual physical inspection. According to this witness, the Beechwood Terrace premises are valued at $170,000.00. The witness, in addition, described the nature of this work and the apportionment of the same between commercial and residential properties. This witness testified that he has testified in court on over 2,000 occasions and indicated the cost of his services.
From the testimony of the defendant, Joseph Buttacavoli, the court finds that he was born October 25, 1960; he is age 42. He is required to take nasal sprays for allergies that he has and he has skin problems of a dermatitis nature. The defendant consults with a physician regularly. He is employed by Electric Boat and has been since March of 1983. His prior employment was with Glass Container Corporation at Dayville, Connecticut. The defendant finished high school and had one year at community college in drafting matters. The defendant was a rigger at Electric Boat until 1996. The defendant met the plaintiff at Electric Boat when both worked there. At that time, the plaintiff was an administrative aide and had been at Electric Boat for 12 years.
The plaintiff was out of employment at Electric Boat at the time the child Kristen was born on a maternity leave.
This is the defendant's first marriage and the second for the plaintiff.
The defendant indicated that, in fact, he did work long hours, often times 12 hours a day, some times seven days a week. Part of his compensation was overtime pay.
In contrast to the testimony of the plaintiff, the defendant represented that he was, in his words, there every day for his children. The defendant acknowledges that his work schedule probably had an effect on the breakdown of the marriage but indicated that he was always financially responsible and made sure that the bills were paid. CT Page 865
In February of 1996 the defendant was able to change his position at Electric Boat from a rigger to a draftsman and incident to his present duties, he does on occasion travel with regard to inspecting submarines as concerns design matters or flaws therein. While doing this, the defendant is compensated at the rate of $19.09 per hour as base compensation. He receives reimbursement from E.B. for expenses while on travel.
The defendant acknowledged locking the premises during the time of the pool party but represented that he was merely trying to get ready to go to work.
The defendant's lament was to the effect that the plaintiff and the witness Dziedzic were in a state of undress at the time of the pool party and/or under the influence of alcohol. The defendant claimed that the plaintiff screamed obscenities at him at that time and that the plaintiff struck him with her fist.
The defendant indicated that there had been confrontations between the plaintiff and the son Joseph; that on occasion, he would ask the plaintiff not to consume any spirits and characterized the plaintiffs conduct when she has ingested alcohol as being mean and abusive.
It was the defendant's claim that the plaintiff had on occasion resorted to illegal substances but there was no independent evidence of that.
The plaintiff has undergone a hysterectomy and it was the defendant's claim that after that procedure that the plaintiffs conduct was more difficult.
The defendant denied the claim by the plaintiff of striking her with a broom handle in March of 2002.
The defendant acknowledged that he was verbally abusive to the plaintiff.
The defendant's lament was that by virtue of the problems between the parties that the children have been more distant from him.
The defendant indicated he had not been involved in any affairs outside of the manage.
The defendant acknowledged that on occasion he might have a few beers and that prior to this marital union that there was one incident where he CT Page 866 was the subject of a DWI charge.
The defendant now is working 40 hours a week, second shift, receives a 7% bonus because of that status. He is a part of the Marine Draftsman Union.
The defendant's worker's compensation claim involves his hands where the claim was for a 6% disability in each hand. The matter has allegedly been settled. The defendant indicated that he still continues to suffer pain and numbness in his hands and that on occasion he is not able to sleep as a result thereof.
The defendant received approximately $16,000.00 by way of an award. The balance, a part of that sum of $5,000.00, is still due to the defendant.
The defendant now has an apartment of his own in Voluntown.
The defendant made known his request with regard to certain items of personal property on the premises.
During the course of the marriage the defendant's testimony was to the effect that he has made various and sundry improvements to the parties' residence including flooring, the erection of a shed, the pool, the two outside decks, landscaping and the erection of a garage.
The defendant indicated that he had faithfully complied with the child support order from the time of its inception.
The earlier received portion of the worker's compensation claim was made during the period July through November of 2002, at which time approximately $10,000.00 was received by the defendant.
The earnings of the defendant have varied substantially from time to time as a result of his overtime activities or his being required to travel incident to his duties as a design consultant for E.B.
The defendant acknowledged, insofar as the acquisition of the home is concerned, which occurred in 1989, that the plaintiff helped materially in that respect by virtue of a gift from the plaintiffs parents to the parties in the amount of $10,000.00, which was used for the deposit money on the home.
From the financial affidavits submitted by the parties, the court finds as to the plaintiff that she is presently employed as an instructional assistant, special education, for the Griswold Board of Education. Her CT Page 867 gross weekly wage is $411.30. Deductions for union dues, taxes, etc., $106.10 for a net of $305.20. The plaintiffs affidavit reflects $176.00 a week presently received incident to the child support. Total net weekly income including the support order of $481.21. Weekly expenses, $680.90. Debts totaling $1,827.00. The plaintiff values the 20 Beechwood Terrace property as a lay person at $125,000.00; mortgage, $55,900.00 for her share of the equity at $34,550.00. A 1997 Ford Ranger pickup valued at $1,000.00 free and clear. No valuation is shown as concerns any personal property or contents. A checking account, $390.00. The plaintiffs 401K valued at $1,800.00.
From the defendant's financial affidavit, the court finds a gross weekly wage, $760.00. Deductions, taxes, union dues, etc., $245.94 for a net of $514.06. Weekly expenses including the child support, $714.58. Debts shown as $15,000.00. The defendant values the 20 Beechwood Terrace property at $170,000.00; mortgage balance, $58,000.00 for his one half equity share based on his valuation at $56,000.00. A 1997 Ford motor vehicle valued at $1,000.00 free and clear. A 2002 Harley Davidson motorcycle valued at $14,000.00 with a loan balance of $10,750.00 for an equity of $3,250.00. $213.00 in the bank. No cash value to any life insurance. SSIP/Electric Boat, $7,380.00; pension plan indicated at being $546.67 and $205.00 payable at retirement.
From the exhibits, Plaintiffs Exhibit 2 is the detailed appraisal of the real property located at 20 Beechwood Terrace done by Associated Appraisal Service; that appraisal which includes photographs, diagrams, pictures of the subject premises and comparables values the property at $135,000.00.
Defendant's Exhibit D is the Riess Appraisal Company appraisal of the property at 20 Beechwood Terrace and on the basis of that appraisal values the property at $170,000.00. This appraisal is detailed, contains a variety of photographs, drawings, maps and comparables within its confines.
Defendant's Exhibit B is a statement from an entity known as General Dynamics Benefits Connections as concerns the defendant valuing his savings, stock investment plan account at $7,685.10.
Defendant's Exhibits A and C have to do with uncomplimentary communications between the parties, which the court does not need to dwell on.
Plaintiffs Exhibit 3 is the Electric Boat Corporation present value calculation pension plan indicates that the defendant's present value of CT Page 868 monthly pension benefits is the amount of $18,067.00.
Discussion
This is a marital union of 15 years duration; the first marriage for the defendant; the second for the plaintiff two children issue of the marriage; one troubled, but intellectually gifted; the second, well adjusted.
Both of the parties have worked pretty much continuously during the course of the marriage and their employment has been relatively stable. Both are high school graduates plus some additional education.
It would appear on the basis of the record that the defendant husband puts in long hours incident to his present and current employment.
There are few instances of any inappropriate physical conduct.
It would appear that there is not a great deal of common interests insofar as the parties are concerned.
Both of the parties are basically healthy. The defendant has some residual hand problems.
No indication during the conduct of the proceedings with regard to any indiscretions.
The plaintiff seems more socially inclined and has a wider spectrum of friends. The defendant is more reserved.
It would appear that at least one of the causes of the breakdown has to do with arguments between the parties and divergent views on lifestyle leavened with instances of verbal abuse on the part of the defendant against the plaintiff.
There is no clear unequivocal evidence as concerns any use of controlled substances or longstanding immoderate use of alcohol.
The Law 
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statute § 46b-40 and subsequent sections of the statute including without limitation §§ 46b-66a, 46b-81, 46b-82, 46b-83 and 46b-84. The court has considered all of the applicable case law that governs the matter. CT Page 869 The court has considered the testimony of the parties, their candor or lack thereof as observed over the conduct of the trial and arguments of counsel. The court has considered the financial affidavits and those exhibits submitted to the court. The court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability or prospects thereof of each of the parties and the estate and needs of the parties. The court has considered the standards of living of the parties. The court has considered the present financial positions of the parties and their prospects, if any, for future income and opportunities. The court has considered the issue of fault.
The court enters the following orders.
The court dissolves the marital union on the grounds of irretrievable breakdown and declares the parties to be single and unmarried.
The court grants joint custody of the two minor children, Joseph A. Buttacavoli and Kristen A. Buttacavoli. The plaintiff mother shall be the primary physical custodian of the two minor children.
The defendant shall have reasonable rights of visitation. Mindful of the ages of the two children, Joseph and Kristen, the children shall be entitled to have some input into the issue of visitation between themselves and their father, the defendant.
The plaintiff shall not intentionally interfere or hamper reasonable contacts between the defendant and the children and the plaintiff shall terminate the phone call blocking device which has presented problems with regard to the defendant having phone access to the children.
The defendant shall continue to provide health care insurance for the benefit of the children as currently in place through his employment at its current cost and the plaintiff and the defendant shall share the uninsured health costs; 57% by plaintiff wife and 43% by defendant husband. The plaintiff being responsible for the first $100.00 per year for each child as provided by the support guidelines.
The defendant may claim the two minor children as dependency exemptions for state and federal income tax purposes.
The defendant shall pay as child support the sum of $182.00 a week in accordance with the Child Support Guideline worksheets. When the oldest child shall have attained his majority, the issue of support may be readdressed. CT Page 870
The plaintiff wife shall have no claim to the defendant husband's worker's compensation settlement either as to funds already received or the modest balance still due thereon.
The defendant shall transfer to the plaintiff all of his right, title and interest in and to the property located at 20 Beechwood Terrace, Griswold. The plaintiff shall assume and pay the existing mortgage, taxes and insurance and all other indebtedness related to said real estate and indemnify and hold the defendant harmless therefrom. In this respect, the court, in valuing the assets, finds that the appraisal by the Riess Appraisal Company valuing the real estate at $170,000.00 is the more accurate and complete appraisal and the appraisal to which the court has given the greatest weight.
At the time of transfer of title by the defendant to the plaintiff as concerns 20 Beechwood Terrace, the plaintiff shall execute a mortgage deed and note in favor of the defendant in the principal amount of $20,000.00, interest free, payable when the youngest child attains the age of 18 or sooner upon the plaintiffs remarriage, cohabitation or sale of the property, whichever may first occur.
The defendant shall pay to the plaintiff as alimony the sum of $125.00 per week for a period of seven years. The amount may be modified on a showing of a change in circumstances but not the term.
The alimony shall terminate earlier on the plaintiffs death, remarriage or cohabitation as defined.
All of the contents, furnishings, and fixtures situated within the former marital home at 20 Beechwood Terrace, Griswold shall belong to and be the property of the plaintiff wife with the exception of the wheel horse tractor, plow and woodchipper, which the defendant may retrieve no later than 90 days from the date hereof removing the same in a peaceful and quiet fashion without creating any breach of the peace.
The plaintiff shall be entitled by way of a Qualified Domestic Relations Order to 37% of the defendant's accrued defined benefit pension plan at General Dynamics. Said 37% represents one half the coverture fraction mindful that the defendant began work at General Dynamics in early 1983 and the parties were married in December of 1987.
The plaintiff is entitled to a portion of the defendant's pension benefits given the accrual of those benefits over the course of their marriage, the plaintiffs contributions both financial and non-financial CT Page 871 to the marriage and her lack of any significant pension benefits of her own.
The plaintiff wife shall have no claim to defendant's current Stock Savings Investment Plan at General Dynamics valued at $7,380.00 as shown on defendant's financial affidavit.
The defendant shall cooperate with the plaintiff in securing or continuing for her health and medical benefits incident to the defendant's present plan at General Dynamics for a period of three years but at the plaintiffs cost and expense.
The defendant shall continue to name the plaintiff as beneficiary of his present outstanding and existing life insurance during the course of the alimony payments and thereafter the defendant may designate such beneficiary as he sees fit.
The plaintiff and the defendant shall be responsible for those debts listed on their respective financial affidavits with the exception of the Sears credit card bill in the approximate amount of $400.00. The plaintiff and the defendant shall each be responsible for one half of said sum.
The plaintiff and the defendant shall have sole ownership of the vehicles that are currently in their possession and listed on their respective financial affidavits and shall be responsible for any and all debts associated with said vehicle and hold the other party harmless therefrom.
It is unlikely that the plaintiffs income will increase to any great degree in the near future while the defendant's income on the basis of data attached to the plaintiffs amended child support guideline worksheet indicates that on occasion the defendant's weekly gross may be greater than the $760.00 shown on his financial affidavit; to wit, by way of illustration:
11-02-02 weekly gross $942.84
09-21-02 weekly gross $1374.48
09-27-02 weekly gross $1374.48
09-20-02 weekly gross $1535.50
and may increase in the future. Even though the plaintiff may have the CT Page 872 entire equity in the real estate, pursuant to this decree, she will have to pay the mortgage, taxes and allied expenses.
The court also acknowledges that the plaintiff initially took $1,600.00 from the parties' joint account.
Plaintiff may retain her 401K valued at $1,800.00.
Pursuant to Public Act 02-128, an act concerning judicial support orders, a motion or petition for an educational support order may be filed by either the plaintiff or the defendant on a subsequent date.
Each party shall be responsible for their own attorney's fees.
In entering its order as to the marital residence, the court, in addition to the appraisals, took into account the $10,000.00 gift originally provided by the plaintiffs parents, which constituted a deposit as concerns said property when acquired and the reference to the intermittent gifts made to the plaintiff by her parents.
While the record reflects that the defendant was a hard worker, his apparent lack of interest in family values, based on the testimony, constituted the greater fault as between the parties in causing the breakdown of the marital union.
 ___________________ Austin, J.
CT Page 873